IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF GEORGIA
BRUNSWICK DIVISION

FILED
U.S. DISTRICT COURT
2009 JAN 12 PM 2:25

CLERK R. [signature]
SO. DIST. OF GA.

UNITED STATES OF AMERICA :
:
:
v. : CASE NO.: CR208-25
:
:
SAUL ARTHUR ALVIN, III, :

## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

Defendant Saul Arthur Alvin, III ("Defendant") is charged with being a convicted felon in possession of a firearm, in violation of 18 U.S.C. § 922(g)(1). Defendant filed a Motion to Suppress and to Dismiss, to which the Government responded. The undersigned conducted an evidentiary hearing on November 13, 2008, at which Glynn County Police Department Officer Hank Scott ("Scott") and Defendant testified. Defendant filed a post-hearing Brief. The Government filed a Response.

## STATEMENT OF THE CASE

The credible testimony at the evidentiary hearing establishes the following:

Scott and Officer David Udulutch ("Udulutch"), formerly with the Glynn County Police Department, were on bike patrol on the evening of July 19, 2007. On this evening, Scott and Udulutch were patrolling the Waverly Pines neighborhood, which is an area the bike patrol officers targeted based on its reputation for being a high crime area. Scott testified that, during the particular time of evening he and Udulutch were on patrol, it was a "particular[ly] bad time" for crimes involving drugs, break-ins of

automobiles, and residential burglaries. (Hr'g Tr., p. 5). Scott and Udulutch were in the area of 100 Towers Avenue when they saw a 1988 Cadillac Brougham 4-door parked in the driveway, a few feet off the roadway, with its dome light illuminated. Scott testified that he and Udulutch thought the car might have been broken into and investigated the scene by looking into the car to ensure the ignition switch, stereo, and other equipment were in place. Udulutch initially noticed a .38 caliber Ruger handgun on the "floorboard just out from under the driver's front seat[ ]", and Scott noticed the handgun "in plain view" after Udulutch mentioned there was a gun on the floorboard. (Id. at 7). Scott stated he and Udulutch checked to make sure nobody was in the general area of the car. Udulutch went to the residence's door, which was located under a carport and was approximately 15 to 20 feet from the car, and knocked on the door. Mr. Williams came to the door, and Udulutch asked Mr. Williams who owned the vehicle parked in the driveway; Mr. Williams said the car belonged to "his boy", meaning his friend. (Id. at 9). Udulutch asked to speak with the owner, and Defendant and Mr. Williams came outside. Udulutch asked Defendant if the car belonged to him, and Defendant said it was his girlfriend's car. Defendant told Udulutch that a friend drove the car to 100 Towers Avenue. Scott testified that Defendant and Udulutch had a conversation in which Defendant commented that he is a convicted felon. Defendant was not given his Miranda[1] warnings prior to this comment. Udulutch began speaking with Mr. Williams because Defendant denied having any knowledge of the car at that point. Defendant told Udulutch he did not want to get his friend into trouble and would tell Udulutch what was going on after he made a telephone call. Udulutch read Defendant his Miranda rights from the rights and waiver card he had in his pocket. Scott also testified that, per

---

[1] Miranda v. Arizona, 384 U.S. 436 (1966).

the usual practice of him and Officer Udulutch, he likely ran a check on Defendant's license, and the search revealed Defendant's driver's license was suspended. Udulutch asked Defendant about the gun, and Defendant admitted it was his gun and that he had gotten it for protection because he had been shot before. Scott retrieved the handgun from the vehicle while Defendant's felony status was verified. Defendant was arrested after his status as a convicted felon was verified.

## ISSUES PRESENTED

Defendant contends the police officers did not have any right to enter onto the private property located at 100 Towers Avenue.[2] Defendant also contends the police did not have a warrant for the search of his car or his arrest, and no exceptions to the warrant requirement existed. Defendant asserts that, even if the police officers saw the handgun on the floorboard of the car, the seizure of the handgun was illegal because the presence of a handgun on the floorboard of a car does not allow for a warrantless search and seizure.

## DISCUSSION AND CITATION TO AUTHORITY

### I.  Officers' Entry onto Private Property

Defendant alleges that the only reason officers entered the private driveway at 100 Towers Avenue was to investigate why the dome light was illuminated in a parked car. Defendant asserts the mere appearance of a lit dome light in a car is not a constitutionally sufficient reason to trigger an investigation or to justify the police officers' trespass onto private property. Defendant also asserts there are no exceptions to the warrant requirement which apply to this case. Specifically, Defendant asserts there

---

[2] The undersigned assumes for the purposes of Defendant's Motion that he has standing to contest the officers' actions.

were no exigent circumstances to permit the officers' entry onto private property. Defendant alleges the police officers were not exercising any cognizable community caretaking function. Defendant contends the "knock and talk" exception does not apply to the officers' initial entry onto the property.

The Government contends the officers believed further investigation was warranted when they came upon a lighted dome light parked in a driveway in an area of high crime incidents. The Government asserts the Fourth Amendment was not implicated by the officers' entry upon the private land to knock on the door of a citizen's door for legitimate police purposes. The Government also asserts the totality of circumstances supports the officers' actions.

Defendant contends the officers entered the private property, looked into the parked vehicle, discovered the firearm in the vehicle, and then went to the residence to speak with someone about there being a firearm in the vehicle. Accordingly, Defendant alleges the "knock and talk" exception does not apply. Defendant also alleges a car having its dome light on in a high crime area does not justify the officers' entry upon private property.

The Government contends the open field doctrine, not reasonable suspicion or probable cause, is applicable in this case because the officers entered a driveway and made observations therefrom. The Government also contends Defendant had no reasonable expectation of privacy as to the officers' entry onto the private property.

"The right of the people to be secure in their person, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated[.]" U.S. CONST. amend. IV. The Fourth Amendment "protects people, not places. What a person

knowingly exposes to the public, even in his own home or office, is not a subject of Fourth Amendment protection." Katz v. United States, 389 U.S. 347, 351 (1967). The "touchstone" is "whether a person has a constitutionally protected reasonable expectation of privacy." Oliver v. United States, 466 U.S. 170, 177 (1984) (internal punctuation and citation omitted). The Fourth Amendment "does not protect the merely subjective expectation of privacy, but only those expectations that society is prepared to recognize as reasonable." Id. (internal punctuation and citation omitted).

"The private property immediately adjacent to a home is entitled to the same protection . . . as the home itself." United States v. Taylor, 458 F.3d 1201, 1206 (11th Cir. 2006) (citing Oliver, 466 U.S. at 180). "At common law, the curtilage is the area to which extends the intimate activity associated with the sanctity of a man's home and the privacies of life, and therefore has been considered part of the home itself for Fourth Amendment purposes." Id. (internal punctuation and citation omitted). "The extent of the curtilage is determined by factors that bear upon whether an individual reasonably may expect that the area in question should be treated as the home itself." United States v. Dunn, 480 U.S. 294, 300 (1987). "Thus, although the private property immediately adjacent to a home is treated as the home itself, this area is not unlimited. It is limited to that property that the individual should reasonably expect to be treated as the home itself." Id. To determine whether "a portion of the property can be subject to the 'umbrella' of Fourth Amendment protection," United States v. Nichols, 248 F. App'x 105, 107 (11th Cir. 2007) (quoting Dunn, 480 U.S. at 301), the following factors must be examined: "(1) the proximity of the area claimed to be curtilage to the home; (2) the nature of the uses to which the area is put; (3) whether the area is included within an

enclosure surrounding the home; and [ ](4) the steps the resident takes to protect the area from observation." Taylor, 458 F.3d at 1206 (citing Dunn, 480 U.S. at 301).

The uncontroverted testimony before the Court indicates the driveway in which Defendant's car was parked was 20 to 30 feet long and was connected to the residence located at 100 Towers Avenue. Though there was no testimony elicited at the evidentiary hearing, it is reasonable to conclude the driveway connected to 100 Towers Avenue was used as an ingress to and egress from the residence and as a place for visitors to the residence to park their vehicles. There is no evidence before the Court that the driveway was within an enclosure of any kind or that the driveway was obstructed in any way from the public's observation. Thus, the Dunn factors weigh against a finding that the driveway located at 100 Towers Avenue is within the curtilage of the residence and that Defendant was entitled to any Fourth Amendment protection. It was reasonable for the officers to investigate what they deemed to be suspicious circumstances: a lit dome light in a car, which was close to the roadway, parked in a driveway in an area known to be a high crime area at a "particular[ly] bad time" for crimes involving break-ins to automobiles. (See Hr'g Tr., p. 5). In addition, once officers looked around and into the car and noticed all of the equipment was in place, Officer Udulutch noticed the handgun on the floorboard. The officers were reasonable in investigating the circumstances by entering the driveway.[3] Defendant did not have a reasonable expectation of privacy by having his car parked in Mr. Williams' driveway. See Oliver, 466 U.S. at 177. Thus, Defendant was not entitled to the Fourth Amendment's protections. This portion of Defendant's Motion should be denied.

---

[3] The Second Circuit Court of Appeals has found that "the route which any visitor to a residence would use is not private in the Fourth Amendment sense." Nasca v. County of Suffolk, 2008 WL 53247, at *5 (E.D. N.Y. Jan. 2, 2008) (quoting United States v. Reyes, 283 F.3d 446, 465 (2d Cir. 2002)).

## II. Probable Cause to Seize the Firearm

Defendant alleges that, even if the officers' entry onto private property were lawful, the warrantless search of the vehicle and seizure of the firearm were not. Defendant asserts the Government has tried to justify the search and seizure after the fact; however, Defendant contends, Officer Udulutch inspected the firearm before approaching the residence, and that is the reason he knew the firearm was loaded. Defendant also contends the "plain view" doctrine is inapplicable because the presence of a gun on a floorboard of a car is not illegal and does not render the gun contraband.

The Government alleges Defendant offers nothing more than speculation that the officers had an ulterior motive in approaching the residence, that the officers knew the handgun was loaded before asking Defendant or Mr. Williams, and that Officer Udulutch made a false representation in his incident report.

The Fourth Amendment, which prohibits unreasonable searches and seizures by the government, is not implicated by entry upon private land to knock on a citizen's door for legitimate police purposes. See United States v. Tobin, 923 F.2d 1506, 1511 (11th Cir.1991) (no warrant necessary for officers to approach house to question the occupants). "Absent express orders from the person in possession," an officer may "walk up the steps and knock on the front door of any man's 'castle,' with the honest intent of asking questions of the occupant thereof." Taylor, 458 F.3d at 1204 (internal citation omitted). "Thus, officers are allowed to knock on a residence's door or otherwise approach the residence seeking to speak to the inhabitants just [as] any private citizen may." Id. (internal punctuation and citation omitted).

Once the officers discovered a firearm in the floorboard of an unlocked car, it was reasonable for the officers to attempt to contact a person inside the residence to alert him of the presence of a presumably loaded[4] firearm in the unlocked car parked in his driveway, which was located in area having a reputation of being a high crime area. It was during Officer Udulutch's investigation of the presence of a firearm in an unlocked car that he was able to determine that the car was the Defendant's. After learning the car was Defendant's and reading him Miranda warnings, Officers Udulutch and Scott verified Defendant's status as a convicted felon. There being no Fourth Amendment implications of the officers' actions in this case and no need for a warrant to ask investigative questions[5], this portion of Defendant's Motion also should be denied.

## CONCLUSION

Based on the foregoing, it is my **RECOMMENDATION** that Defendant's Motion to Suppress and to Dismiss be **DENIED**.

**SO REPORTED** and **RECOMMENDED**, this 12th day of January, 2009.

JAMES E. GRAHAM
UNITED STATES MAGISTRATE JUDGE

---

[4] Defendant makes much of his allegation that Officer Udulutch *knew* the firearm was loaded because he opened the unlocked door prior to approaching Mr. Williams' door. There is no evidence before the Court which indicates Officer Udulutch knew that the handgun was loaded at the time. Rather, the undersigned finds it was reasonable to assume, without inspection, that the gun was loaded.

[5] Based on the evidence before the Court, Mr. Williams initially told Officer Udulutch that the car belonged to his friend. When Officer Udulutch asked to speak to the friend, Defendant came out of the house with Mr. Williams. Defendant denied ownership of the car and even driving the car. Based on Defendant's representations, Officer Udulutch again asked Mr. Williams about the car. It was only after Defendant said he did not want to get Mr. Williams in trouble and that he was given his Miranda warnings did Defendant admit the firearm officers noticed in the car belonged to him. (See Hr'g Tr., pp. 9-12).